# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

    v.                                                                        No. 1:19-cr-4272-WJ

KAYLA BAKER,

    Defendant.

## MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS BLOOD RESULTS

**THIS MATTER** is before the Court on Defendant's Motion to Suppress Blood Results [Doc. 32], filed February 21, 2020. Defendant is charged with Involuntary Manslaughter and Assault of a Minor Resulting in Serious Bodily Injury. Her charges stem from a car crash in Navajo Nation that the United States alleges she caused while driving intoxicated. Two days after the crash, while meeting with investigators, Defendant signed a Consent to Search form for her blood sample and an Authorization for Use or Disclosure of Protected Health Information form for her treatment records from the day of the crash. United States Exs. 10 and 11. Defendant, however, argues her consent was not voluntary and, therefore, requests the Court suppress her blood results.

Consent is voluntary if the United States establishes by "clear and positive testimony that consent was unequivocal and specific and freely and intelligently given." *United States v. Warwick*, 928 F.3d 939, 945 (10th Cir. 2019) (quoting *United States v. Angulo-Fernandez*, 53 F.3d 1177, 1180 (10th Cir. 1995)). "Whether a defendant's consent to search [is] voluntary is a question of fact, and the court considers the totality of the circumstances in making this determination." *Id.* (quoting *United States v. Carbajal-Iriarte*, 586 F.3d 795, 799 (10th Cir. 2009)). "A signed consent

form indicates voluntary consent." *Id.* (citing *Eidson v. Owens*, 515 F.3d 1139, 1147 (10th Cir. 2008)). Other relevant considerations include

> physical mistreatment, use of violence, threats, promises, inducements, deception, trickery, or an aggressive tone, the physical and mental condition and capacity of the defendant, the number of officers on the scene, and the display of police weapons. Whether an officer reads a defendant his *Miranda* rights, obtains consent pursuant to a claim of lawful authority, or informs a defendant of his or her right to refuse consent also are factors to consider in determining whether consent given was voluntary under the totality of the circumstances.

*Id.* (quoting *United States v. Jones*, 701 F.3d 1300, 1318 (10th Cir. 2012)).

Defendant argues the consent she gave the investigators to obtain her blood test results was not voluntary because they deceived her into consenting. She explains that (1) after telling the investigators that she would consent to them obtaining her treatment records but not her blood test results, the investigators deceived her by telling her that her treatment records would include her blood test results; and (2) that the investigators deceived her by telling her that they had a way of getting the blood test results with a subpoena, omitting any discussion about the requirement that they go through the Court to do so. Defendant summarizes her argument stating:

> Only when misinformed that the investigators would get [the blood] results as part of the medical records, and then deceived about the nature of the subpoena process, did [Defendant] come to the false conclusion that law enforcement's receipt of the records was inevitable. [Defendant's] statement "Well, I'll just save you guys time, then. I will just consent for you guys to" confirms that she believed that law enforcement would inevitably obtain the lab results.

Doc. 32 at 9. Defendant did not request an evidentiary hearing. *See* D.N.M. Crim. R. 47.10 ("Parties will state in their pleadings whether and why an evidentiary hearing is needed."). Defendant and the United States, however, both provided the Court a transcript of the interview in question. Defendant Ex. A; United States Ex. 9. The Court has reviewed the transcript and determined that an evidentiary hearing is not needed because the transcript details what transpired.

The interview began at 9:56 am on June 18, 2018, two days after the crash. The

investigators reintroduced themselves to Defendant and asked her if she was on any medications. Defendant explained she was taking Tylenol for a scrape. The investigators then reviewed an FBI Advice of Rights form with her. United States Ex. 8. Defendant read the form out loud, placed her initials in the appropriate places, and signed it acknowledging that she understood her rights. The investigators then asked Defendant about a few admissions she made in a previous interview with them before discussing Defendant's treatment records and blood test results:

> **Investigator Begay**: Okay. With that, it's just part of our investigation process. You were taken to Fort Defiance Emergency Room?
>
> **Defendant**: Um-hmm.
>
> **Investigator Begay**: And they treated you there, and they drew blood from you there. And just were for me to – part of the investigation, right, I'd like to do an – as – I – I'd like to ask for your consent for the treatment that they had – did for you there.
>
> **Investigator Yazzie**: Just the treatment.
>
> **Investigator Begay**: The treatment and – as well as obtaining any results that came out from them drawing your blood.
>
> **Defendant**: Okay. So that night, you asked me to draw blood.
>
> **Investigator Begay**: Um-hmm.
>
> **Defendant**: And I'm going to stick with that. And it's going to be a "no." You guys can take the treatment, but you guys are not going to take lab results.
>
> **Investigator Begay**: No lab results? You don't –
>
> **Defendant**: No lab results.
>
> **Investigator Begay**: – you're not going to allow me to obtain the – the samples that they drew from you?
>
> **Defendant**: Uh-uh.
>
> **Investigator Begay**: Okay. So we can still just go with the lab (inaudible) – treatment part.

3

> **Investigator Yazzie**: So what you're consenting to is getting the medical records
>
> **Defendant**: Um-hmm.
>
> **Investigator Yazzie**: – of you?
>
> **Defendant**: Just the medical records, but not lab results.
>
> **Investigator Yazzie**: Okay. Of your – that will – the medical records will contain your injury.
>
> **Defendant**: Um-hmm.
>
> **Investigator Yazzie**: It'll contain all the treatment that you received at the ER.
>
> **Defendant**: Um-hmm.
>
> **Investigator Yazzie**: That will include information on your blood or any type of – urine, anything like that, fluids that was taken from you. That's going to be included in your medical records.
>
> **Defendant**: Okay.
>
> **Investigator Yazzie**: So I just want you to understand that part.

Defendant argues that Investigator Yazzie's last three statements were deceptive. Although they may not have been accurate in this situation, they do not strike the Court as deceptive. Based on the Court's experience, it is not uncommon for treatment records to include or reference blood test results. The interview then continued as follows:

> **Defendant**: Okay. So even if I do say that you guys can't pick up the lab results, you still are going to get it?
>
> **Investigator Yazzie**: We still have a way of process of doing that, which is called a subpoena.
>
> **Defendant**: Umm.
>
> **Investigator Yazzie**: So we can go (inaudible) –
>
> **Defendant**: Can you explain that? (Inaudible).
>
> **Investigator Yazzie**: It's a – it's a subpoena. It's where we went – we go through

the Court and we request formally through the Court to obtain records.

**Defendant**: Okay. Well, I'll just save you guys the time, then. I will just consent for you guys to.

Defendant argues that Investigator Yazzie's last three statements were deceptive because Investigator Yazzie made it seem that it was a forgone conclusion that they would get a subpoena for the blood test results and did not mention that they would have to go through the Court to get the subpoena. Defendant's argument, however, is premised on an inaccurate account of what Investigator Yazzie said. Although Investigator Yazzie did not explain the subpoena process in detail, she stated "we go through the Court and we request formally through the Court to obtain records." And "such statements are not per se coercive." *United States v. Cruz-Mendez*, 467 F.3d 1260, 1267 (10th Cir. 2006) (collecting cases). The investigators then proceeded to double-check with Defendant to make sure she understood what she was consenting to:

**Investigator Yazzie**: Okay. But you do understand –

**Defendant**: Yeah, I do.

**Investigator Yazzie**: – that process? Okay.

**Defendant**: Um-hmm.

**Investigator Yazzie**: We just want to make sure that you understand what's going to be in your medical records –

**Defendant**: Um-hmm.

**Investigator Yazzie**: – if you're going to consent to that. And then the blood that we would like to retrieve from the hospital –

**Defendant**: Um-hmm.

**Investigator Yazzie**: – the results of that will also be in the medical records too.

**Defendant**: Okay.

**Investigator Yazzie**: Okay? So what we're – what we're asking for is the medical

records, the documents –

**Defendant**: Uh-huh.

**Investigator Yazzie**: – and the blood itself.

**Defendant**: Uh-huh.

**Investigator Yazzie**: Okay? So just to let you know that you're aware and clear of what our request is.

**Defendant**: Okay.

The investigators then showed Defendant the FBI Consent to Search form for her blood sample [United States Ex. 10] and read it out loud to her. Defendant signed it. The investigators then showed Defendant the Authorization for Use or Disclosure of Protected Health Information form for her treatment records from the day of the crash [United States Ex. 11] and read the pertinent parts of it out loud to her. Defendant also signed it.

After considering the totality of the circumstances, the Court has little trouble finding that Defendant's "consent was unequivocal and specific and freely and intelligently given." *Warwick*, 928 F.3d 945 (quoting *Angulo-Fernandez*, 53 F.3d at 1180). Defendant was of sound mind during the interview, was advised of and acknowledged in writing that she understood her rights, and signed two consent forms. *See id.* ("A signed consent form indicates voluntary consent."). There is no evidence of physical mistreatment, violence, threats, promises, inducements, or an aggressive tone. And the allegations of deception, as explained earlier in this Opinion, are without merit.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Suppress Blood Results [Doc. 32] is **DENIED**.

_____
**CHIEF UNITED STATES DISTRICT JUDGE**